ALPHEUS HARDY & others *vs.* JOHN BRIGGS & others.

A store situated in the middle of a block of stores, and containing a steam-engine and boiler, with shafting and other appendages running through the whole block, and adapted to furnish power for raising and lowering goods, was let for ten years for a certain annual rent, with a stipulation that "if at the expiration of five years the income for power let, other than that used or let by said lessees, be four thousand dollars or upwards per annum, the said lessees are to pay the further sum of five hundred dollars per annum during the last five years of this lease. *Held*, that the word "income" in the above stipulation should be construed to mean gross income.

CONTRACT brought by the trustees under the will of Joshua Sears to recover the additional five hundred dollars rent for store No. 9 in State Street Block in Boston for the sixth year of the term under a lease thereof from the plaintiffs to the defendants for ten years from June 1st 1858, which provided for the payment of an annual rent of $6000, with the following stipulation in regard to additional rent: "In addition to the foregoing stipulation for rent, it is agreed that, if at the expiration of five years the income for power let, other than that used or let by said lessees in store No. 9, be four thousand dollars or upwards per annum, the said lessees are to pay said trustees the further sum of five hundred dollars, making the whole rent sixty-five hundred dollars per annum during the last five years of this lease."

At the trial in the superior court, before *Ames*, J., without a jury, the following facts appeared:

The store No. 9 is the middle one of a block of seventeen large warehouses. Before letting this store to the defendants, the plaintiffs had established therein a steam-engine, furnishing power by means of a shaft and bands to each of the warehouses in the block. The care and management of the engine are in the hands of the lessees, who pay all the expense of running it and of furnishing power for the whole, and receive payment therefor from the owners or occupants of the other numbers. The average annual amount of money received by the defendants for power so furnished to the other occupants of the block for the first five years of the term was about $7200; and for

the sixth year it was $7600. There was no evidence as to the amount or value of the power used or let by the lessees in the premises demised to them. The annual expenses of furnishing the entire steam power, amounted on an average of the first five years to about $3710 ; for the sixth year to $4732.21. At the commencement of the lease, the engine had been established in said store about three months, and the plaintiffs had during that time run and managed it, and let power to some of the other occupants ; and the amount of money received by them for power let at the commencement of the lease was at the rate of more than $4000 per annum, although power was not then let there to all the stores in the block.

On these facts, the judge ruled that the plaintiffs were entitled to recover, and found accordingly ; and the defendants alleged exceptions.

*J. C. Dodge,* for the defendants. In the construction of contracts, words are to be understood in their ordinary sense. The ordinary meaning of " income " is the gain derived from any business or property. See Worcester's and Webster's Dictionaries. The word is used in this sense in the statutes of the United States and of this commonwealth, imposing taxes on incomes. The situation of the parties to this lease shows that they must have meant net income.

*A. S. Wheeler,* for the plaintiffs.

FOSTER, J. We are called upon to construe the language of a lease by the terms of which provision is made for the payment of an increased rent in case " the income for power let, other than that used or let by said lessees in store No. 9," (the premises leased to the defendants,) amounts to a certain sum. Is this phrase to be construed as meaning gross income or net income ; the whole amount of rent received for power furnished to the other stores in the block, or the net profit arising from power so furnished, after deducting from the sums received the cost of its production ?

In computing the amount to be realized before the increase of rent begins, the power used by the tenants or let to others in No. 9 is expressly excluded. If this store was to be charged

with a portion of the cost of the power, we should expect to find
that intention clearly expressed, and that some method of esti-
mate, apportionment or computation of its share of the cost
would be provided in the lease. In the absence of any such
stipulation, whatever construction of the word income might be
adopted, we should conclude that the premises demised to the
defendants were not to be charged with any portion of the cost
of the power. This being so, if the cost of the whole power is
to be deducted from the payments of the tenants in the other
stores to ascertain "the income" which has been received, the
deduction to be made must necessarily include the entire cost
of all the power which might under any circumstances be used
in No. 9. The defendants would therefore never be bound to
pay the increased rent, until the *maximum* of power capable of
being produced by the engine and used in No. 9 had been paid
for by the other tenants of the block.

We cannot believe that such was the intended bargain of
the parties. The language employed, standing by itself, is con-
sistent with either construction. When applied to the subject
matter of the contract and the circumstances under which it was
made, we interpret the word income in this instance and con-
nection to mean simply receipts.

The result is, that the plaintiffs are entitled to recover the
larger amount of rent, and the exceptions are overruled.